UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

MICHAEL EDWARDS, )
 )
       Plaintiff, )
 )
       v. )   Case No. 21-cv-3054-JBM
 )
WEXFORD HEALTH SOURCES, INC., )
 et. al., )
 )
       Defendants. )

## MERIT REVIEW ORDER –SECOND AMENDED COMPLAINT

**Joe Billy McDade, U.S. District Judge:**

Plaintiff, proceeding *pro se,* has filed a second amended complaint [ECF 23] under 42 U.S.C. § 1983 alleging inadequate medical treatment at the Taylorville Correctional Center ("Taylorville"). The case is before the Court for a merit review pursuant to 28 U.S.C. § 1915A. In reviewing the complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649-51 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013)(citation and internal quotation marks omitted). While the pleading standard does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Wilson v. Ryker*, 451 Fed. Appx. 588, 589 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### FACTS

Plaintiff alleges in his second amended complaint that he suffered a torn rotator cuff and full thickness tear of the bicep tendon when he slipped and fell on a patch of ice. He further

alleges that a failure to properly diagnose and treat his injury, including a delay in ordering an MRI, lead to further damage and pain. He does not list which Defendants he seeks to bring his claims against in his complaint, but does name within his allegations Dr. Nawoor[1], Nurse Megan, which is believed to be Director of Nursing Megan Eggimann, and generally the Taylorville and Wexford staff whose names he believes will be on his medical documents.

On or around October 26, 2019, Plaintiff and a group of inmates were sent to the recreation yard. Due to bad weather and a possible water leak in the facilities' pipes, an ice patch existed at the entrance to the yard. Plaintiff alleges that the Illinois Department of Corrections had a duty to ensure that there was not ice or other hazards on the path. While walking, Plaintiff slipped on the ice and fell. He injured his right shoulder, which was eventually diagnosed as a torn rotator cuff and full thickness tear of the bicep tendon.

However, that diagnosis was delayed. On the day of the fall or shortly thereafter, Plaintiff went to the Health Care Unit. The on-site doctor was present and examined him. Plaintiff believes that the on-site doctor during his treatment was Dr. Nawoor, or a doctor with a similar name. Because only one doctor is on-site at a time, Plaintiff alleges that records would conclusively show the name of the doctor. Dr. Nawoor did not correctly diagnose Plaintiff on that date. An x-ray was performed on or around November 9, 2019, and showed that Plaintiff had not broken any bones. However, unlike an MRI, it could not show the soft tissue damage that Plaintiff had actually suffered.

After the x-ray, "the doctor," perhaps Dr. Nawoor, diagnosed Plaintiff with a pulled muscle and offered only ibuprofen for the pain. Plaintiff was ordered to do six weeks of physical therapy. A surgeon later told him the exercises only worsened the injury. Plaintiff does not state

---

[1] Plaintiff identifies this individual as" Dr. Nawar" in his second amended complaint. However, the Defendant has previously been identified on the docket sheet as Dr. Nawoor."

who ordered him to do physical therapy. Plaintiff alleges that he constantly complained during these physical therapy sessions of excruciating pain. However, Plaintiff does not state to whom he complained. The individuals completing physical therapy at one point visually observed and stated that his shoulder injury was worsening. Plaintiff also alleges that he was told that he was required to complete six weeks of physical therapy before an MRI would be scheduled. He does not state who told him this requirement. Nothing in the complaint indicates that Dr. Nawoor was directly involved in the physical therapy.

Plaintiff was issued a low-bunk permit around the time that an unknown individual told him that "it was visible to the naked eye that his shoulder was not getting better." However, around 3-4 weeks prior to February 21, 2020, Plaintiff's low-bunk permit was revoked. His previous complaint indicated that this revocation was because Nurse Megan (Eggimann) observed him working out. During the period he did not have a low-bunk permit, he alleges that each time he had to climb into his bed, it would hurt his shoulder. Plaintiff alleges that assigning him a top bunk despite his shoulder injury created a substantial risk of additional harm. Plaintiff alleges that he is not certain who makes the decision of whether to provide a low-bunk permit, but believes it is up to the staff employed by Wexford. Plaintiff also alleges that Megan (Eggimann) was responsible for revoking his low-bunk permit.

Then, about four months after his injury, on or about February 21, 2020, Plaintiff received an MRI, which showed a soft tissue injury that was determined to need surgery. His low-bunk permit was reinstated. Upon learning the results of the MRI Nurse Megan (Eggimann) in the Health Care Unit stated that ". . .we thought you were faking/ lying…" and repeatedly apologized to him.

Plaintiff also alleges that during the four months between his injury and his MRI, that he made dozens of requests for further testing and/or analysis. He states he would put these requests in the internal mailing system and they would go to the Health Care Unit. He does not allege that he made verbal requests directly to staff members.

Plaintiff's complaint does not state who treated him during the time period between his initial incorrect diagnosis by Dr. Nawoor, and his eventual MRI, other than an allegation that Nurse Megan (Eggimann) revoked his low-bunk permit. Plaintiff alleges that his medical records will contain notes regarding who saw him. Plaintiff alleges that Taylorville or Wexford staff did not add him to the on-site doctor's schedule during this time, suggesting that the doctor(s) may not have known about his complaints and worsening condition. And, his allegations are largely directed at the Wexford staff that failed to add him to the schedule to see the doctor. However, he also confusingly alleges that he was seen by the doctor 22 times between October 26, 2019 and February 21, 2020.

Plaintiff's shoulder surgery was finally completed in or around September or October 2020. The surgeon, Dr. El Bitar, stated that the delay in getting proper treatment resulted in flaws and complications in the surgery. Plaintiff alleges that Dr. El Bitar expressed his disappointment in the care that Plaintiff had received. After the surgery Plaintiff's bicep muscle remained detached and stint he got during the surgery did not remain attached. Plaintiff also suggests that Dr. El Bitar may have been negligent. Plaintiff suggests that he may need another surgery, but that he is still not getting needed treatment. He does not elaborate on these claims.

**ANALYSIS**

Plaintiff first pleads that constitutionally unsafe conditions caused his fall. To plead an Eighth Amendment conditions of confinement claim, Plaintiff must plead that "the conditions at

issue were 'sufficiently serious' so that 'a prison official's act or omission results in the denial of the minimal civilized measure of life's necessities'" and that the prison official acted with deliberately indifference to the conditions in question. *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (quoting *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970 (1994)). "Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and "either acts or fails to act in disregard of that risk." *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). A plaintiff must allege "that an official actually knew of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016). A substantial risk of harm is one in which the risk is "so great" that it is "almost certain to materialize if nothing is done." *Wilson v. Ryker*, 451 F. App'x 588, 589 (7th Cir. 2011). (internal citations omitted). "[T]he conditions presenting the risk must be sure or very likely to cause ... needless suffering, and give rise to sufficiently imminent dangers." *Id*.

Plaintiff alleges that Taylorville breached its duty of care by failing to maintain proper conditions. Section 1983 liability is predicated on fault, so to be liable, a defendant must be "personally responsible for the deprivation of a constitutional right." *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir.2001) (quoting *Chavez v. Ill. State Police,* 251 F.3d 612, 651 (7th Cir.2001)). Plaintiff, however, has not named any individuals that knew of the unsafe conditions, but failed to act. Moreover, even if an individual knew that there was an icy patch and failed to act, "[f]ederal courts consistently have adopted the view that slippery surfaces and shower floors in prisons, without more, cannot constitute a hazardous condition of confinement." *Pyles v. Fahim*, 771 F.3d 403, 410 (7th Cir. 2014). Accordingly, the Court finds that Plaintiff has failed to state a claim related to the existence of an icy patch. Plaintiff's only allegations against Defendant Jefferies relates to this claim, so he is dismissed from this lawsuit.

Plaintiff also brings a claim of deliberate indifference regarding the treatment of his shoulder. "A prison official violates the Eighth Amendment by acting with subjective 'deliberate indifference' to an inmate's 'objectively serious' medical condition." *Reck v. Wexford Health Sources, Inc.*, No. 19-2440, 2022 WL 538716, at *6, --- F.4th --- (7th Cir. Feb. 23, 2022) (citing *Sherrod v. Lingle,* 223 F.3d 605, 610 (7th Cir. 2000)). Deliberate indifference requires more than negligence; "something akin to recklessness" is needed. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). However, "[d]oggedly persisting in an ineffective treatment can establish deliberate indifference." *Reck*, 2022 WL 538716, at *6. And, the failure to address readily treatable pain may be evidence of deliberate indifference. *Petties*, 836 F.3d at 730; *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 830 (7th Cir. 2009) ("[T]he turning of a blind eye to the legitimate medical needs of a prisoner-patient, including his complaints of pain, can constitute a violation of the Eighth Amendment.").

Plaintiff has sufficiently plead an objectively serious medical condition. But, Plaintiff has not included sufficient allegations to show that the two named individuals in his second amended complaint were deliberately indifferent to his pain. Plaintiff need not "show that the official intended harm or believed that harm would occur," but must do more than "show[ ] mere negligence." *Eagan v. Dempsey*, 987 F.3d 667, 695 (7th Cir. 2021) (citing *Pettie*, 836 F.3d at 730). Even objective recklessness is not enough: "Officials can avoid liability by proving they were unaware even of an obvious risk to inmate health or safety." *Petties*, 836 F.3d at 728.

Plaintiff's allegations against Dr. Nawoor show that he initially took Plaintiff's allegations of pain seriously and examined him. Plaintiff's complaint is not clear, but presumably Dr. Nawoor ordered an x-ray and ordered physical therapy. In hindsight, an MRI may have been a more prudent course, but Plaintiff has not shown that Dr. Nawoor was deliberately indifferent

for not immediately ordering one. Plaintiff has not alleged that Dr. Nawoor personally knew that the physical therapy was not improving Plaintiff's injuries, that Plaintiff was still experiencing pain, or that Plaintiff's low-bunk permit had been revoked. Plaintiff does state that he saw "the doctor" or a healthcare provider about twenty-two times between his injury and the MRI, but Plaintiff has not alleged that any of these visits were with Dr. Nawoor.

Plaintiff's allegations against Defendant Megan Eggimann are also insufficient to state a claim. Plaintiff pleads that Defendant Megan Eggimann knew about his complaints of pain. He also pleads that she apologized to him after receiving the MRI results and said that "we thought you were faking/ lying." However, Plaintiff has not alleged that Defendant Megan Eggimann's belief that he was faking or lying about his pain was not genuine. While he alleges the individuals doing his physical therapy knew that his shoulder was visibly not improving, there is nothing in the complaint to suggest that Defendant Megan Eggimann was one of the individuals who knew this was the case. Accordingly, he has not alleged that Defendant Megan Eggimann's failure to act—whether by failing to ensure he was seen by an on-site doctor or a failure to issue a low-bunk permit—was egregious enough to qualify as a constitutional violation.

However, Plaintiff has now sufficiently stated a deliberate indifference claim against the healthcare providers that were involved in his treatment after it was determined that his injury was worsening despite the physical therapy. Plaintiff alleges that during each evaluation between his fall and the MRI the individual giving him care would have entered notes into his medical chart and that each subsequent individual would have seen and known that he was not improving. He also says that he told these individuals that his shoulder was not improving and that he was in pain. All complaints were ignored. Plaintiff also alleges that there was a requirement that he complete six-weeks of physical therapy before receiving an MRI and that

this requirement was evidently not reconsidered despite the worsening of his condition. Accordingly, Plaintiff has alleged that the healthcare providers he saw prior to receiving his MRI but after starting physical therapy knew that his shoulder was not improving, knew that he was in extreme pain, but yet continued with a treatment that was ineffective and worsening his condition.

Plaintiff, however, has not provided the names of any of these Defendants and alleges he does not know their names. He also has not provided any indication of how many individuals treated him, but curiously knows that it was roughly twenty-two visits. He alleges that the names of the Defendants will come out in discovery because they must be in his medical file. When "a pro se plaintiff states a colorable claim but is unable to identify the proper defendants due to his incarceration the district court should assist him in identifying the proper parties." *Wetzel v. Sheahan*, 210 F.3d 377 * 4 (7th Cir. 2000). *See also, Donald v. Cook Co. Sheriffs Dept.*, 95 F.3d 548, 556 (7th Cir. 1996) ("[d]epending on the particular circumstances of the case, the court may assist the plaintiff by allowing the case to proceed to discovery against high-level administrators with the expectation that they will identify the officials personally responsible ..."). Accordingly, the Court will add the Warden of Taylorville, Melinda Eddy, and Wexford Health Sources as Defendants solely for purposes of identifying the medical staff responsible. *See Donald v. Cook Cty. Sheriff's Dep't*, 95 F.3d 548,555-56 (7th Cir. 1996). Once Defendants have provided this information (which may be in the form of copies of all medical and other records pertaining to Plaintiff's shoulder injury and medical treatment), they may file a motion to be dismissed from the case. Plaintiff is placed on notice that it will be his responsibility, during initial disclosures and discovery to identify the names of Doe Defendants and promptly file an amended complaint so that may be served with process. The failure to do so may result in the dismissal of the case.

Finally, the Court notes that Plaintiff's second amended complaint does not include any allegations nor mention of the remaining Defendants named on the docket: Defendants Katie Hackney and S. Benton. Accordingly, these Defendants are dismissed.

**IT IS THEREFORE ORDERED:**

1) Pursuant to its merit review of Plaintiff's second amended complaint under 28 U.S.C. § 1915A, the Court finds that Plaintiff has presented enough facts to proceed with an Eighth Amendment claim of deliberate indifference against Doe Defendants who are the healthcare providers who failed to adjust treatment when Plaintiff's injury was getting worse and he told them he was in excruciating pain. Wexford Health Sources shall remain as a Defendant and the Clerk is **DIRECTED** to add Warden Melinda Eddy as a Defendant for the purpose of helping to identify the medical staff involved in the treatment of Plaintiff's shoulder injury prior to February 21, 2020. When Defendants have done so, the Court contemplates dismissing them as parties. All other claims will not be included except in the Court's discretion upon motion by a party for good cause shown, or by leave of court pursuant to Federal Rule of Civil Procedure 15.

2) The Court directs the Clerk of the Court to terminate A. Nawoor, Katie Hackney, Megan Eggimann, Rob Jefferies, and S. Benton.

3) This case is now in the process of service. The Court advises Plaintiff to wait until counsel has appeared for Defendant before filing any motions to give Defendant notice and an opportunity to respond to those motions. Motions filed before Defendant's counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time unless otherwise directed by the Court.

4) The Court will attempt service on Defendants by mailing a waiver of service. Defendants have sixty days from service to file an Answer. If Defendants have not filed Answers or

appeared through counsel within ninety days of the entry of this order, Plaintiff may file a motion requesting the status of service. After Defendants have been served, the Court will enter an order setting discovery and dispositive motion deadlines.

5) If a Defendant no longer works at the address Plaintiff provided, the entity for whom Defendant worked while at that address shall submit to the Clerk Defendant's current work address, or, if not known, Defendant's forwarding address. This information shall be used only for effectuating service. Documentation of forwarding addresses shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

6) Defendants shall file Answers within sixty days of the date the Clerk sends the waiver of service. A motion to dismiss is not an Answer. The Answer should include all defenses appropriate under the Federal Rules. The Answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an Answer sets forth Defendant's positions. The Court does not rule on the merits of those positions unless and until Defendant files a motion. Therefore, no response to the Answer is necessary or will be considered.

7) This District uses electronic filing, which means that, after Defendant's counsel has filed an appearance, Defendant's counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Plaintiff does not need to mail to Defendant's counsel copies of motions and other documents that Plaintiff has filed with the Clerk. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Clerk. Plaintiff must mail his discovery requests and responses directly to Defendant's counsel. Discovery requests or responses sent to the Clerk will be returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until

Defendant's counsel has filed an appearance, and the Court has entered a scheduling order, which will explain the discovery process in more detail.

8) The Court grants Defendant's counsel leave to depose Plaintiff at his place of confinement. Defendant's counsel shall arrange the time for the deposition.

9) Plaintiff shall immediately inform the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

10) If Defendant fails to sign and return a waiver of service to the Clerk within thirty days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals Service on Defendant and will require Defendant to pay the total costs of formal service under Federal Rule of Civil Procedure 4(d)(2).

11) The Court directs the Clerk to enter the standard qualified protective order under the Health Insurance Portability and Accountability Act.

12) The Court directs the Clerk to attempt service on the named Defendants under the standard procedures.

3/14/2022  /s/ Joe Billy McDade
ENTERED  JOE BILLY MCDADE
　　　　　UNITED STATES DISTRICT JUDGE